Yvonne REID, Plaintiff,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Defendant.

No. 91 Civ. 6535 (WK).

United States District Court,
S.D. New York.

Sept. 20, 1995.

Robert Cini, Law Offices of David Scheinfeld, New York City, for plaintiff.

James A. O'Brien, Special Assistant U.S. Attorney, U.S. Attorney's Office, Southern District of New York, New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

In a memorandum of April 7, 1994, we found that plaintiff, a Jamaican national, had been awarded lawful permanent resident status in 1980 and accordingly ordered defendant to process her INS Form I–551, more popularly known as a "green card." Plaintiff now moves for an award of attorneys' fees pursuant to the Equal Access to Justice Act (hereinafter "the EAJA"), 28 U.S.C. § 2412(d). For reasons which follow, we grant the motion.

## BACKGROUND

We inherited this matter from Judge Leval after he was appointed to the Court of Appeals for the Second Circuit. In summariz-ing the case, we shall rely in large part on Judge Leval's statement of facts in his July 13, 1993 memorandum. *See Reid v. INS,* 91 Civ. 6535 (PNL) at 2–3, 1993 WL 267278 (S.D.N.Y. July 13, 1993) (hereinafter "the Leval Opinion").

Plaintiff first applied for lawful permanent residence status in 1977, based on her status as the unmarried daughter of lawful permanent resident. In early 1980 defendant placed on her passport a temporary I–551 stamp indicating an adjustment of her status to lawful permanent residence. However, though defendant continued to issue plaintiff temporary I–551 passport stamps on a regular basis until March 15, 1989, it never issued a permanent INS Form I–551 or "green card." Plaintiff married on June 26, 1980.

In September and November of 1983, defendant sent both plaintiff and her attorney interview notices, but plaintiff failed to appear at such interviews. Plaintiff claims that she failed to so appear because the notices were sent to an old address rather than the address she had provided defendant in correspondence of May 1980. Defendant contends that on January 27, 1984, after plaintiff's failure to respond to the notices, it terminated action on her application.

In December 1983 and January 1984, plaintiff inquired by mail about her green card. Several months later defendant's facility issuing green cards informed her that it had not received the necessary forms from her local office. In October 1984, plaintiff filed an INS Form I–90 to advise defendant that she had not yet received her green card. Defendant wrote plaintiff in August 1985 to inform her that it could not locate any record of its having granted her lawful permanent resident status.

In February 1985, plaintiff pled guilty to a charge of possession for sale of cocaine. In November 1988, defendant informed plaintiff that she had not been granted lawful permanent resident status. In August 1990, plaintiff resubmitted her application for such status to defendant. On April 4, 1991, defendant denied this renewed application on the ground that plaintiff had been convicted of a narcotics offense.

Plaintiff filed the present action on September 1991. She and defendant filed cross-motions for summary judgment. In ruling on those motions, Judge Leval concluded that under relevant INS regulations, plaintiff's temporary I–551 stamps—in the absence of any countervailing evidence—were conclusive evidence of her having been granted lawful permanent resident status because defendant had failed to present any evidence suggesting that her application had been denied. *See* the Leval Opinion generally. However, Judge Leval found an unsettled question of fact which prevented him from granting summary judgment to plaintiff: whether plaintiff was married prior to receiving her first I–551 stamp. *Id.* For, Judge Leval held, if the marriage took place before such time, plaintiff would not have been eligible for lawful permanent resident status based on her being the *unmarried* child of a lawful permanent resident—the basis upon which she had filed her application for an adjustment of status. *Id.* at 14–15.

After this matter was transferred to us defendant renewed its motion for summary judgment, which we denied. Adopting Judge Leval's ruling on the cross-motions for summary judgment we held a hearing on March 7, 1994 to resolve the factual question he had identified. We found that by a preponderance of the evidence plaintiff's initial I–551 stamp was issued prior to her marriage. Accordingly, we ordered defendant, pursuant to our authority under 5 U.S.C.A. § 706 (1977 & Supp.1995), to grant plaintiff lawful permanent resident status.

Plaintiff now seeks attorneys' fees in the amount of $110,480 pursuant to the EAJA. Defendant argues that because its position in this litigation was "substantially justified" for purposes of the EAJA it is not liable for such fees.

## DISCUSSION

Under the EAJA, a court "shall" award attorneys fees and other expenses to a "prevailing party" other than the United States, in any civil action (other than cases sounding in tort) including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action unless the court finds that the position of the United States was substantially justified * * *

28 U.S.C.A. § 2412(d)(1)(A) (1995). Plaintiff is undoubtedly a prevailing party. We therefore need consider only whether or not the defendant's position related to this litigation has been "substantially justified."

■ The EAJA defines "the position of the United States" as including both the position taken by the government in litigation and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C.A. § 2412(d)(2)(D). "Substantially justified" for purposes of the EAJA means "justified to a degree that could satisfy a reasonable person ..." *Pierce v. Underwood* (1988) 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490. In order to defeat an attorneys' fees claim by a prevailing party, an agency must establish that "*all* of its positions were substantially justified ..." *Myers v. Sullivan* (11th Cir.1990) 916 F.2d 659, 666 n. 5 (emphasis in original), *citing Hudson v. Sec. of Health and Human Svcs.* (11th Cir.1988) 839 F.2d 1453, 1456 n. 3, *aff'd* (1989) 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941.

We first address defendant's position during this litigation. Thereafter we consider its conduct prior to the commencement of this action.

### Defendant's Position in this Litigation

■ When this matter was before Judge Leval plaintiff took two positions: (1) that defendant was equitably estopped from denying plaintiff's second application for adjustment of status, which she filed in 1990, because it was negligent in its handling of her initial application; and (2) that under relevant INS regulations she was entitled to a green card.

Judge Leval rejected the first when denying plaintiff's motion for summary judgment on such grounds. Defendant's position in challenging that portion of plaintiff's motion was, therefore, substantially justified.

■ As to the second, Judge Leval found a question of fact which prevented him from

granting summary judgment to either plaintiff or defendant. We adopted his findings and resolved that factual question in plaintiff's favor, having conducted a hearing at which we ruled that plaintiff was more probably correct than not and decided that the testimony offered by plaintiff was more persuasive than that offered by defendant. Defendant's opposition to this second position thus appears to have been "substantially justified." [1]

Finally, plaintiff asserts that defendant's renewal of its summary judgment motion before us was futile and thus its position therein cannot be said to have been substantially justified. We disagree. Although we elected not to reconsider Judge Leval's ruling, we had the power to do so and defendant cannot be faulted for testing the waters as to whether or not we would. Besides, the work required of plaintiff's counsel to respond to the renewed motion was minimal at most.

### *Defendant's Conduct Prior to this Litigation*

■ However, plaintiff also contends that defendant's failure properly to process plaintiff's 1979 application for adjustment of status, as well as its decision in 1990 to deny her new application, were not substantially justified. She claims that such conduct was negligent and contrary to relevant INS regulations.

Defendant denied plaintiff's 1990 application based on her 1985 conviction. It is unclear the extent to which plaintiff asserted in the application process—as she did here—that she was entitled to a green card based on her first application and the series of I-551 stamps in her passport. However, even assuming she had made such an assertion, defendant would have faced the same factual question which required us to conduct a

hearing: the date of plaintiff's first I-551 stamp. Defendant's rejection of plaintiffs' 1990 application was, therefore, as reasonable as was its position in the litigation.

■ With respect to defendant's failure expeditiously to process plaintiff's 1979 application, we must first determine whether or not this lawsuit can be said to be "based upon" the INS' conduct prior to 1990. While it is true that the adjustment of an immigrant's status is (and was as at the time in question) discretionary with the Attorney General, see 8 U.S.C.A. § 1255 (1970 & Supp. 1995), had defendant acted upon plaintiff's 1979 application in a reasonable time—either to grant it or deny it—there would have been no occasion for this lawsuit.[2] Had defendant then approved the application, the suit would have been unnecessary. On the other hand, had defendant denied the application there would, by hypothesis, exist evidence contradicting the I-551 stamps and the suit would have been utterly futile. In brief, we find that this litigation could not have existed but for defendant's conduct with regard to plaintiff's 1979 application. Therefore this action must be said to have been "based on" such conduct.

■ Moreover, we find that the conduct in question cannot be deemed "substantially justified." Where undue delay by a government agency is the basis of an action against it and where it is found to be "less than reasonable" it cannot be said to be "substantially justified" for purposes of determining whether plaintiff's counsel should receive fees under the EAJA. *See, e.g. Chen v. Slattery* (D.D.C.1994) 842 F.Supp. 597, 599; *Chen v. Slattery,* No. 94 Civ. 2585, 1995 WL 498766 (S.D.N.Y. August 21, 1995) at 6. Accordingly, we grant the motion for attorneys' fees.

---

**1.** *See, e.g., Wilfong v. United States* (7th Cir.1993) 991 F.2d 359, 368 (holding that "when resolution of a case hinges to such an extent on determinations of witness credibility, it is an abuse of discretion to find that the government's position was not substantially justified"); *Awmiller v. United States* (9th Cir.1993) 1 F.3d 930, 931; *Crawford v. Sullivan* (4th Cir.1991) 935 F.2d 655, 657.

**2.** This conclusion is wholly consistent with Judge Leval's ruling on plaintiff's estoppel argument. He found that because she offered no evidence that she detrimentally relied upon defendant's failure to expeditiously process her 1979 application her equitable estoppel theory failed. As to her motion for an award of attorneys' fees under the EAJA, plaintiff need not establish any such reliance but only that her suit is based on an act or failure to act by defendant which was not "substantially justified."

**802**

## CONCLUSION

For reasons stated herein, we grant the motion for an award of attorneys' fees pursuant to the EAJA. We refer this matter to a magistrate judge to determine the appropriate amount of such award.

**SO ORDERED.**