T.C. Memo. 2001-41

UNITED STATES TAX COURT

PHUONG K. NGUYEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16146-99.                    Filed February 23, 2001.

<u>Bruce E. Gardner</u>, for petitioner.

<u>Warren P. Simonsen</u> and <u>Roger W. Bracken</u>, for respondent.


MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:   This matter is before the
Court on petitioner's motion for an award of administrative and
litigation costs, filed pursuant to section 7430 and Rules 230
through 233.[1]

_____

[1] All section references are to the Internal Revenue Code,
as amended; however, references to sec. 7430 are to such section
                                        (continued...)

After concessions by respondent,[2] the issues for decision are as follows:

(1) Whether respondent's position in the administrative and court proceedings was substantially justified.  We hold that it was in the court proceeding but that it was not in the administrative proceeding.

(2) Whether petitioner unreasonably protracted the administrative and court proceedings.  We hold that she did to the extent provided herein.

(3) Whether the administrative and litigation costs claimed by petitioner are reasonable.  We hold that costs claimed by petitioner are reasonable to the extent provided herein.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioner's motion.  See Rule 232(a)(2). We therefore decide the matter before us based on the record that has been developed to date.

---

[1](...continued)
in effect at the time that the petition was filed.  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes: (1) Petitioner substantially prevailed, see sec. 7430(c)(4)(A)(i); (2) petitioner satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii); and (3) petitioner exhausted her administrative remedies, see sec. 7430(b)(1).

Background

Petitioner resided in Silver Spring, Maryland, at the time that her petition was filed with the Court.

Petitioner timely filed a Federal income tax return for the taxable year 1998. On her return, petitioner listed her filing status as head of household, and she claimed dependency exemptions and the earned income credit. Petitioner also claimed a refund of tax in the amount of $2,725.

By letter dated May 7, 1999 (the examination letter), respondent's Service Center in Atlanta, Georgia, informed petitioner that "We are examining your Federal income tax return for 1998 and find we need documentation to verify certain items." More specifically, respondent requested that petitioner provide information and documents relating to: (1) Head of household filing status; (2) dependency exemptions; and (3) the earned income credit.

Petitioner responded to the examination letter by mailing various documents to respondent. After reviewing this material, respondent concluded that the information submitted was insufficient to verify the items under examination.

Thereafter, by letter dated June 10, 1999 (the proposed adjustment letter), respondent proposed a deficiency in petitioner's income tax in the amount of $2,225. The proposed deficiency, which served to reduce the claimed overpayment from

$2,725 to $500, was predicated on (1) a change in petitioner's filing status from head of household to single and (2) the disallowance of the dependency exemptions and earned income credit as claimed on the return.  Respondent informed petitioner that if she did not agree with the proposed deficiency, she could submit documents or information that she wished respondent to consider.

In response to the proposed adjustment letter, petitioner mailed various documents to respondent.  Respondent reviewed this material and concluded that it was insufficient to verify the items under examination.  By letter dated July 1, 1999 (the July 1st letter), respondent so informed petitioner.  Respondent also informed petitioner in the July 1st letter that any further supporting documents or information that petitioner might care to submit would be considered if such material were received within 15 days of the date of the letter.

Petitioner responded to the July 1st letter by mailing various supporting documents to respondent.  This material was received by the mailroom in respondent's Atlanta Service Center on July 12, 1999.  The material was routed to the examination division, where it was received on July 13, 1999, and then routed to the 90-day unit, where it was received on July 15, 1999.[3]

---

[3]  We understand the 90-day unit to be the office in the examination division of the Service Center that is responsible
(continued...)

By a notice of deficiency dated July 16, 1999 (the notice of deficiency), respondent determined a deficiency in petitioner's Federal income tax for 1998 in the amount of $2,225.  The determinations made by respondent in the notice of deficiency mirror those made in the proposed adjustment letter; namely, the change in petitioner's filing status from head of household to single and the disallowance of the dependency exemptions and the earned income credit as claimed on the return.  The notice of deficiency was issued by the director of respondent's Atlanta Service Center.

After the issuance of the notice of deficiency, respondent reviewed the documentation that petitioner had submitted in response to respondent's July 1st letter.  Upon reviewing this material, respondent concluded that petitioner was entitled to head of household filing status, as well as the dependency exemptions and earned income credit as originally claimed on her return.  Accordingly, by letter dated August 18, 1999 (the no-change letter), respondent informed petitioner that respondent had reconsidered her 1998 tax liability and had accepted her 1998 return as filed.  The no-change letter informed petitioner as follows:

--------

3(...continued)
for issuing notices of deficiency to taxpayers.

After reviewing the information we received on 7/12/1999, we reconsidered your 1998 federal income tax liability and accepted your 1998 return as filed or as adjusted previously.

Please disregard the notice of deficiency we sent you on 7/16/1999. You will not need to file a petition with the United States Tax Court.

If you have any questions, you may write or call the tax examiner whose name, telephone number, and contact hours appear at the top right corner of this letter.

The no-change letter was issued by the chief of one of the customer service divisions in respondent's Atlanta Service Center.

Notwithstanding the no-change letter, petitioner retained Bruce E. Gardner (Mr. Gardner) to represent her. Mr. Gardner is an attorney who is admitted to practice before this Court, and he is petitioner's counsel of record in the present proceeding. Petitioner met with Mr. Gardner on August 28, 1999.

Consistent with the no-change letter, respondent mailed a check to petitioner on September 13, 1999. The amount of the check, $2,808.67, represented the refund claimed by petitioner on her 1998 return, i.e., $2,725, plus $83.67 of interest.

On October 14, 1999, Mr. Gardner hand delivered a petition to the Court, thereby commencing a case on petitioner's behalf. See sec. 6213(a).

On December 13, 1999, respondent filed a motion to extend by 60 days the time within which to file an answer to the petition.

The motion was predicated on the ground that respondent's district counsel office had not yet received the administrative file pertaining to petitioner's 1998 return (the administrative file).  On December 16, 1999, petitioner filed an Opposition to respondent's motion, objecting to a 60-day extension but agreeing to a 30-day extension.  By Order dated December 20, 1999, respondent's motion was granted in that the time to file an answer was extended to January 19, 2000.

In the meantime, on December 17, 1999, respondent's district counsel office in Washington, D.C. (district counsel), wrote the following letter to Mr. Gardner:

> As you are aware, the government filed a motion to extend time to answer the Nguyen case.  As explained in my voice mail to you, I have yet to receive the administrative file in this case.  A preliminary review of Ms. Nguyen's account indicates that the Service accepted her 1998 return sometime in August 1999, and sent her a refund on September 13, 1999.  It is unclear as to whether or not she was sent a letter advising her that her return was accepted.  I would appreciate your notifying me if she received such a letter.

> If I find that Ms. Nguyen's 1998 return has already been accepted by the Service, I will recommend that an answer not be filed in this case, but rather a decision document reflecting no deficiency due from Ms. Nguyen and no overpayment due to her for tax year 1998.

> If you have a question, please call me at * * * .

The record suggests that Mr. Gardner did not notify district counsel that petitioner had received the no-change letter.

On January 14, 2000, district counsel received the administrative file, confirmed the issuance of the no-change

letter, and informed Mr. Gardner that respondent wished to submit a decision document to the Court reflecting a zero deficiency, in lieu of filing an answer. Mr. Gardner responded by stating that he intended to file a motion for administrative and litigation costs.

On January 19, 2000, respondent filed an answer to the petition. In the answer, respondent conceded that there was no deficiency in income tax due from petitioner for the taxable year 1998. Respondent attached a copy of the no-change letter as an exhibit to the answer.

Also on January 19, 2000, district counsel sent Mr. Gardner a letter enclosing a form of decision and stipulation (the form of decision) reflecting no deficiency in, and no overpayment of, petitioner's income tax for 1998. The form of decision included a stipulation that petitioner is not entitled to attorney's fees under section 7430. That same day, district counsel received a letter from Mr. Gardner stating, in part, as follows:

> This letter concerns your message that you are in the process of preparing decision documents reflecting no tax deficiency is due.
>
> We are delighted that this case can be expeditiously resolved on the merits. Based upon you message it appears that the notice of deficiency should have never been mailed to the taxpayer. Or if the Service subsequently changed its position on this case, it did not legally withdraw the notice of deficiency by executing the proper forms. In either case, the taxpayer incurred unnecessary legal expenses and costs related to the defense of the deficiency notice in the amount of $1,022.50 for which she should be compensated.

> A fair and equitable resolution of this case should put the taxpayer in the position she would have been if the deficiency notice had not been mailed.  Accordingly, we submit costs and attorney fees in the amount $1,022.50 should be paid by the Service to make the taxpayer whole and that amount should be reflected in the decision documents you are in the process of repairing.

On March 13, 2000, district counsel received from Mr. Gardner executed copies of the form of decision, which had been revised to eliminate the stipulation regarding attorney's fees. Respondent in turn executed the form of decision, as revised, and submitted it to the Court. On March 30, 2000, the Court executed the document and entered decision (the Decision) pursuant to the parties' apparent agreement.

On April 27, 2000, petitioner filed a Motion For An Award Of Reasonable Administrative & Litigation Costs (petitioner's motion for costs), requesting an award in the amount of $2,039.25.  The Court then vacated the Decision and filed it instead as a stipulation of settlement between the parties.  See Rules 231(c) and 232(f).

On June 19, 2000, respondent filed a Response to petitioner's motion for costs (respondent's Response).  In the Response, respondent alleges that his position in the proceedings was reasonable and disputes petitioner's allegations that (1) petitioner did not unreasonably protract the proceedings and (2) the amount of costs requested was reasonable.

On June 23, 2000, petitioner filed an Additional Affidavit pursuant to Rule 232(d). In the Additional Affidavit, petitioner requests an award of costs in the amount of $3,312.19.

On July 24, 2000, petitioner filed a Motion In Limine. Relying principally on Fed. R. Evid. 408 (relating to compromise and offers to compromise), petitioner's motion sought to exclude from evidence various statements made in, and various exhibits attached to, respondent's Response.[4]  On August 14, 2000, respondent filed a Response objecting to petitioner's Motion in Limine.  On August 18, 2000, the Court denied petitioner's motion.

On August 31, 2000, petitioner filed a Reply to respondent's Response pursuant to an Order of the Court.  In her reply, petitioner requests an award of costs in the amount of $6,724.69. Thereafter, on September 25, 2000, respondent filed a Reply to petitioner's Reply filed August 31, 2000.

On January 19, 2001, the Court initiated a telephone conference with the parties for the purpose of encouraging a settlement regarding the award of costs.  On January 26, 2001,

---

[4]  For example, petitioner sought to exclude the fact that on Sept. 13, 1999, respondent mailed to petitioner a check for $2,808.67, which amount constituted the overpayment claimed by petitioner on her 1998 return, plus interest.  Suffice it to say that petitioner's Motion in Limine sought to emasculate the factual and legal basis for respondent's defense against petitioner's motion for an award of costs and, if granted, would have precluded the Court from rationally deciding petitioner's motion for costs.

the parties advised the Court that their negotiations in this regard had not been successful.

Discussion

We apply section 7430 as most recently amended by Congress in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 1301, 112 Stat. 685, 727. However, certain of the amendments made by RRA 1998 to section 7430 (regarding the reasonableness of costs, the type of recoverable costs, and other provisions that are not in issue herein) apply only to costs incurred after January 18, 1999.

A. Requirements For a Judgment Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the prevailing party, (2) has exhausted his or her administrative remedies within the IRS, and (3) did not unreasonably protract the court proceeding. See sec. 7430(a) and (b)(1), (3). Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the prevailing party, and (2) did not unreasonably protract the administrative proceeding. See sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or

administrative costs under section 7430.  See Rule 232(e).  Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding.  See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a "prevailing party", the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement.  Sec. 7430(c)(4)(A).  Respondent concedes that petitioner has satisfied the requirements of section 7430(c)(4)(A).  Petitioner will nevertheless fail to qualify as the prevailing party if respondent can establish that respondent's position in the court and administrative proceedings was substantially justified.  See sec. 7430(c)(4)(B).

B.  Substantial Justification

The Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  See Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  See Pierce v. Underwood, supra; Rickel v.

Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565 (construing similar language in the Equal Access to Justice Act). Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'". Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position. See Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable. See Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession does remain a factor to be considered. See Powers v. Commissioner, 100 T.C.

457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice of deficiency. See sec. 7430(c)(7)(B). The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to the petition. See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of this Court; Sher v. Commissioner, supra at 134-135. Ordinarily, we consider the reasonableness of each of these positions separately. See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144. We necessarily follow this approach here because respondent's positions were different in the administrative and litigation proceedings.

We begin with the position taken by respondent in the notice of deficiency.

Respondent contends that the notice of deficiency was issued "because petitioner failed to provide sufficient documentary substantiation of her entitlement to the disallowed dependency

exemptions, earned income credit and head of household filing status, in sufficient time for such documentation to be reviewed by respondent prior to issuance of the notice of deficiency." However, the record belies this contention.

In the July 1st letter, respondent informed petitioner that the documentation submitted by petitioner in response to the proposed adjustment letter was insufficient to verify the items under examination, but that respondent would consider any further documentation that petitioner might care to submit if such documentation were received by July 16, 1999. Petitioner promptly responded to this invitation by mailing documentation, which was received by the mailroom in respondent's Atlanta Service Center on July 12, 1999, the examination division on July 13, 1999, and the 90-day unit on July 15, 1999. Nevertheless, without first evaluating petitioner's documentation, respondent mailed the notice of deficiency to petitioner on July 16, 1999. After evaluating petitioner's documentation, however, respondent concluded that such documentation was sufficient to verify the items under examination.

The documentation submitted by petitioner in response to the July 1st letter was solicited by respondent. Having solicited that documentation, respondent was obliged to evaluate it before issuing a notice of deficiency.[5] Respondent, however, did not do

---

[5] We might take a contrary view if expiration of the period
(continued...)

so.  Such failure led respondent to take a position in the notice of deficiency that was not supported by information already in respondent's possession.  In other words, respondent's position in the notice of deficiency was contrary to fact and law and therefore not substantially justified within the meaning of section 7430(c)(4)(B).  See Pierce v. Underwood, 287 U.S. 552 (1988).

Respondent relies on Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52, for the proposition that the Commissioner should not be liable for a taxpayer's costs for the period of time that it may reasonably take to review documentation submitted by the taxpayer.  However, that case is clearly distinguishable.  There, the Commissioner issued a notice of deficiency before the examination was completed in order to toll the running of the period of limitations.  Because the Commissioner had not received the taxpayers' consent to extend the period of limitations, the Court of Appeals concluded that the issuance of the notice was reasonable, notwithstanding the fact that the Commissioner ultimately conceded the case.

In the present case, the statute of limitations was of no legitimate concern to respondent at the time that the notice of

---

[5](...continued)
of limitations were imminent.  However, in the present case, the year under examination was 1998; accordingly, the statute of limitations on assessment was of no legitimate concern to respondent in July 1999.  See sec. 6501(a).

deficiency was issued. See supra note 5. Accordingly, Harrison v. Commissioner, supra, offers no solace to respondent.

We recognize, of course, that it is reasonable for the Commissioner to refuse to concede an audit adjustment until after he receives from the taxpayer, and has had an opportunity to verify, adequate substantiation for such adjustment. E.g., O'Bryon v. Commissioner, T.C. Memo. 2000-379. However, we have not so held in the context of a case in which expiration of the period of limitations is not imminent and the Commissioner, while in possession of all relevant facts and documents, neglects to review such facts and documents and instead issues a notice of deficiency to the taxpayer.

In view of the foregoing, we hold that the position taken by respondent in the notice of deficiency was unreasonable.

We turn now to the position taken by respondent in the answer to the petition. The latter position reflected respondent's concession, as evidenced by the no-change letter and followup refund, of the deficiency, and such position was substantially justified.

C. Unreasonable Protraction of the Proceedings

Pursuant to section 7430(b)(3), "No award for reasonable litigation and administrative costs may be made * * * with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted

such proceeding."

After issuing the notice of deficiency, respondent sent petitioner the no-change letter, informing her that her return had been accepted as filed and that she could disregard the notice of deficiency. However, petitioner did not disregard the notice of deficiency, but rather retained Mr. Gardner, who subsequently filed a petition on her behalf.

Respondent contends that petitioner unreasonably protracted the proceedings by pursuing this case after respondent had conceded it; i.e., after respondent had mailed petitioner the no-change letter and issued the refund check.

Section 6213(c) provides as follows: "If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a) [of section 6213], the deficiency, notice of which has been mailed to the taxpayer, <u>shall</u> be assessed, and <u>shall</u> be paid upon notice and demand from the Secretary." (Emphasis added.) See also sec. 301.6213-1(c), Proced. & Admin. Regs., which similarly provides that if the taxpayer fails to file a timely petition, the district director or the director of the regional Service Center <u>shall</u> assess the amount determined as the deficiency.[6]

---

[6] The notice of deficiency that was sent to petitioner included the following paragraph, which essentially paraphrased sec. 6213(c):

> If you decide not to file a petition with the Tax
> (continued...)

There is no statutory basis for a no-change letter, cf. sec. 7121 (authorizing closing agreements that are generally final and conclusive), and we are aware of no case holding that a no-change letter is binding on the Commissioner. Under the circumstances, we think it was appropriate for petitioner to protect herself from the possibility that the no-change letter might not have represented respondent's final position, e.g., that the no-change letter might have been issued before internal review was completed.[7] The commencement of an action in this Court offered such protection.

Respondent contends that petitioner had a duty to mitigate costs and that she should have requested that the notice of deficiency be rescinded. See sec. 6212(d); <u>Hanashiro v. Commissioner</u>, T.C. Memo. 1999-78; <u>Powell v. Commissioner</u>, T.C. Memo. 1998-108; see also <u>Hesse v. Commissioner</u>, T.C. Memo. 1997-

---

[6](...continued)
Court, we would appreciate it if you would sign and return the enclosed waiver form. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. The enclosed envelope is for your convenience. <u>If you decide not to sign and return the statement and you do not timely petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the above mailing date of this letter</u> (150 if this letter is addressed to you outside the United States). [Emphasis added.]

[7] We note that the notice of deficiency was issued by the director of respondent's Atlanta Service Center, whereas the no-change letter was issued by one of the director's subordinates.

333; <u>Slattery v. Commissioner</u>, T.C. Memo. 1995-274.[8]

The no-change letter stated, in effect, that the notice of deficiency was inaccurate and could be disregarded and that the filing a petition with the Tax Court was unnecessary. But the no-change letter did not mention the possibility of rescinding the notice as permitted by section 6212(d). The case law cited in the previous paragraph, specifically including <u>Powell v. Commissioner</u>, <u>supra</u>, generally requires that a rescission be committed to a writing reflecting the parties' mutual consent. Accordingly, respondent does not contend that the no-change letter itself effected a rescission of the notice of deficiency. Thus, under the circumstances, we do not agree with respondent that petitioner unreasonably protracted the proceedings when she filed the Tax Court petition, which protected her rights as explained above.[9]

However, petitioner did protract the court proceeding by: (1) Requiring respondent's district counsel to file an answer (by not furnishing a copy of the no-change letter, which would have permitted the immediate filing of a settlement stipulation

---

[8]  See also Rev. Proc. 88-17, 1988-1 C.B. 692, regarding the procedure to be followed, and Form 8626 (Agreement to Rescind Notice of Deficiency), regarding the IRS form to be utilized.

[9]  We also note that the commencement of a case in this Court pursuant to a notice of deficiency generally precludes the Commissioner from issuing any further notice of deficiency for the same taxable year, see sec. 6212(c), whereas the rescission of a notice of deficiency pursuant to sec. 6212(d) has no such effect.

pursuant to respondent's offer to do so); (2) executing the form of decision (containing the stipulation against an award of costs, which required the Decision to be subsequently vacated); and (3) filing the Motion in Limine (which was not meritorious). We therefore hold that petitioner is not entitled to an award of costs with respect to the portion of the court proceeding that was protracted because of these matters. See sec. 7430(b)(3).

D. The Amount of Reasonable Costs

Mr. Gardner submitted various statements detailing costs and expenses with respect to representing petitioner in both the administrative and court proceedings. Those statements indicate that Mr. Gardner's hourly rate was $175.

Absent special factors, an award relating to attorney's fees incurred in calendar year 1999 after January 18 of that year is $130 per hour and incurred in calendar years 2000 and 2001 is $140 per hour. See sec. 7430(c)(1)(B)(iii); O'Bryon v. Commissioner, T.C. Memo. 2000-379; Rev. Proc. 2001-13, 2001-3 I.R.B. 337, 341; Rev. Proc. 99-42, 1999-2 C.B. 568, 572; Rev. Proc. 98-61, 1998-2 C.B. 811, 816. In view of the noncomplex nature of the substantive issues presented by the notice of deficiency (i.e., filing status, dependency exemptions, earned income credit), and further in view of the fact that those issues were conceded by respondent in the no-change letter before Mr. Gardner was even retained, we find that no special factor

justifies an award of attorney's fees at a rate greater than the statutory limit.

Regarding the time devoted by Mr. Gardner to this case, we find that the 4.5 hours spent by him in 1999 in meeting with petitioner, reviewing the notice of deficiency and related documentation, and preparing the petition for filing is reasonable.

We also find that 1.0 hour of Mr. Gardner's time (0.5 hour in 1999 and 0.5 hour in 2000) was reasonably devoted to the period between the filing of the petition and the filing of the motion for costs. This total consists of the reasonable time spent in reading respondent's answer (which conceded the deficiency), reading and responding to respondent's correspondence, and finalizing the form of decision, as revised.

In addition, we find that 9.5 hours of Mr. Gardner's time were reasonably devoted to prosecuting petitioner's motion for costs in 2000 and 2001. This total consists of the reasonable time spent in preparing the motion, evaluating respondent's Response, preparing the Additional Affidavit pursuant to Rule 232(d), preparing the Reply to respondent's Response as directed by the Court, evaluating respondent's Reply, and participating in the Court-initiated telephone conference and related negotiations in January 2001.

Finally, we find that petitioner is entitled to recover the

$60 court cost incurred in filing her petition.  See sec.
7430(c)(1)(A); Rule 20(b).

D. <u>Conclusion</u>

In conclusion, we hold that petitioner is entitled to an
award of administrative and litigation costs in the amount of
$2,110 (i.e., 5.0 hrs. @ $130/hr. + 10.0 hrs. @ 140/hr. + $60).
In so holding, we have carefully considered remaining arguments
made by the parties for a result contrary to that expressed
herein and, to the extent not discussed above, we consider those
arguments to be without merit.

In order to reflect the foregoing,

<u>An appropriate order and
decision will be entered.</u>