T.C. Memo. 2002-271

UNITED STATES TAX COURT

JOHN J. PETITO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3277-00.                    Filed October 28, 2002.

John J. Petito, pro se.

<u>Theresa G. McQueeney</u> and <u>Lewis J. Abrahams</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Chief Special
Trial Judge Peter J. Panuthos pursuant to section 7443A(b)(5) and
Rules 180, 181, and 183.[1]  The Court agrees with and adopts the

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended; references to sec. 7430
are to that section in effect at the time that the petition was
(continued...)

opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, <u>Chief Special Trial Judge</u>:  This matter is before the Court on petitioner's motion for an award of administrative and litigation costs, filed pursuant to section 7430 and Rules 230 through 233.  Petitioner seeks an award of $86,500 in administrative and litigation costs and $9 million in punitive damages.

After concessions by respondent,[2] the issues for decision are as follows:

(1) Whether petitioner may claim in this case administrative and litigation costs associated with separate criminal proceedings;

(2) whether respondent's position in this matter was substantially justified;

(3) whether petitioner unreasonably protracted the proceedings;

(4) whether the administrative and litigation costs claimed by petitioner are reasonable;

---

[1](...continued)
filed (Mar. 21, 2000).  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes:  (1) Petitioner substantially prevailed, see sec. 7430(c)(4); (2) petitioner exhausted administrative remedies, see sec. 301.7430-1(e)(2), Proced. & Admin. Regs.; and (3) petitioner satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

(5) whether petitioner is entitled to punitive damages.

Although petitioner requested an evidentiary hearing, the Court concludes that such a hearing is not necessary for the proper disposition of petitioner's motion.  See Rule 232(a)(2). We therefore decide the matter before us on the basis of the record that has been developed to date.

Petitioner resided in North Woodmere, New York, at the time that his petition was filed with the Court.

### Background

Petitioner is an accountant and the sole shareholder of John J. Petito CPA, P.C. (Petito Corp.).  Petitioner prepared and submitted to the Internal Revenue Service (IRS) a Form 1120S, U.S. Income Tax Return for an S Corporation, for Petito Corp. for the taxable year 1992.  On the Form 1120S, Petito Corp. reported gross receipts or sales of $158,350, cost of goods sold of $75,903, and deductions of $84,191, leaving a net loss of $1,744. Petito Corp. issued a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., to petitioner for 1992 allocating to him an ordinary loss of $1,744.

Petitioner prepared and filed with the IRS a Form 1040, U.S. Individual Income Tax Return, for himself for the taxable year 1992.  On the Form 1040, petitioner listed his filing status as married filing separately, and he reported adjusted gross income of $5,282, comprising wages, salaries, and tips of zero, taxable

interest of $8,327, dividends of $199, a capital loss of $1,500, and an S corporation loss reported on Schedule E of $1,744.

In 1995, respondent instituted a criminal investigation regarding petitioner's tax liability for 1992. Petitioner executed Forms 872, Consent to Extend the Time to Assess Tax, extending the time for the assessment of taxes for 1992 until December 31, 1999.

By letter dated April 9, 1997, petitioner's then counsel, Lawrence V. Carra (Mr. Carra), wrote a letter to Iris Rothman, an attorney assigned to respondent's Office of District Counsel in Westbury, New York, referring to petitioner's tax liabilities for 1992 through 1995 and informing her that petitioner "wishes to enter into a plea agreement."

On September 10, 1997, Special Agents Philip D. Hill and Randall L. Sprance met with Mr. Carra and a certified public accountant, Timothy Mulcahy (Mr. Mulcahy), with regard to petitioner's tax liability for 1992. During the meeting, Messrs. Carra and Mulcahy provided the special agents with a schedule titled "PETITO CPA STATEMENT OF INCOME AND EXPENSES" indicating that Petito Corp. had overstated its deductible expenses for 1992. In particular, rather than incurring a net loss of $1,744, the schedule indicated that Petito Corp. earned net income of $44,456 during 1992. It appears that the parties believed that such income would be included in petitioner's gross income as a

pass-through item from Petito Corp.

On December 29, 1999, respondent issued to petitioner a notice of deficiency. In the notice, respondent determined a deficiency of $30,490 in petitioner's income tax for 1992, an addition to tax under section 6654 of $1,330, and an accuracy-related penalty for fraud under section 6663 of $22,868. The deficiency was attributable in part to respondent's determination that petitioner failed to report his share of income from Petito Corp.

Petitioner filed a timely petition contesting the notice of deficiency described above. After respondent filed an answer to the petition, petitioner filed a motion to dismiss the case on a variety of grounds, including allegations that the notice of deficiency was frivolous and respondent's agents conducted the audit in a negligent manner. Petitioner's motion to dismiss was denied.

Petitioner subsequently filed a motion for reconsideration alleging that the notice of deficiency was invalid on the ground that Petito Corp. was a subchapter S corporation, and, therefore, respondent was obliged under sections 6241-6245 of the unified subchapter S corporation audit and litigation procedures to issue a final notice of S corporation administrative adjustment (FSAA) to Petito Corp. before issuing a notice of deficiency to petitioner. Petitioner asserted that Petito Corp. made a valid

election on its 1986 Form 1120S to invoke the unified audit and litigation procedures. See sec. 301.6241-1T(c)(2)(v)(B), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3001 (Jan. 30, 1987).

Respondent opposed petitioner's motion to dismiss on the grounds that: (1) Petitioner failed to produce a copy of the Form 1120S that Petito Corp. purportedly filed for 1986, and (2) the Form 1120S that Petito Corp. submitted for 1992 did not include an election that the corporation would be subject to the unified S corporation audit and litigation procedures.

In the meantime, on August 31, 2000, petitioner was indicted in the U.S. District Court for the Eastern District of New York and charged with one count of filing a false or fraudulent tax return. United States v. Petito, No. CR-00-924.

Petitioner's motion to reconsider was called for hearing at the Court's motions session in Washington, D.C. Following the hearing, the parties filed with the Court a stipulation including as an exhibit a copy of the Form 1120S that Petito Corp. purportedly filed for 1986. On the basis of the record presented, we denied petitioner's motion for reconsideration. See Petito v. Commissioner, T.C. Memo. 2000-363. In particular, we concluded that petitioner had failed to prove that Petito Corp. made an election to bring itself within the unified subchapter S corporation audit and litigation procedures. As a

result, we held that respondent was not obliged to issue an FSAA to Petito Corp. before issuing a notice of deficiency to petitioner.

On January 2, 2001, petitioner moved the Court to reconsider its opinion in Petito v. Commissioner, supra. Petitioner averred that he had obtained information from respondent (in a phone conversation with an IRS customer service employee) that, despite Petito Corp.'s submission of Forms 1120S for the years 1990, 1991, and 1992, respondent had always treated Petito Corp. as a regular or C corporation. Petitioner asserted that the notice of deficiency issued to him should be considered invalid inasmuch as the adjustments therein should have been determined against Petito Corp. as opposed to him. Respondent filed an objection to petitioner's motion for reconsideration asserting that Petito Corp.'s status as an S corporation or a C corporation did not affect the validity of the notice of deficiency issued to petitioner.

Petitioner's motion for reconsideration was called for hearing in New York, New York. During the hearing, counsel for respondent conceded that respondent's records indicated that, despite Petito Corp.'s practice of submitting Forms 1120S, respondent had treated Petito Corp. as a C corporation. The Court received the testimony of David Messecca, the revenue agent that prepared the notice of deficiency in question. Revenue

Agent Messecca testified that he prepared the notice of deficiency as directed by Special Agent Hill using the schedule prepared by Mr. Mulcahy and the tax returns filed by petitioner and Petito Corp. for 1992. On the record presented, the Court denied petitioner's motion for reconsideration on the ground that, although the notice of deficiency may have been incorrect, it was not invalid for the purpose of invoking the Court's jurisdiction.

On September 28, 2001, the District Court granted the Government's motion to dismiss the indictment filed against petitioner.

On November 16, 2001, respondent filed with the Court a status report stating that respondent would concede the instant case. On February 21, 2002, the parties filed a stipulation of settled issues stating that petitioner is not liable for any deficiency, addition to tax, or penalty, nor is petitioner entitled to an overpayment for the taxable year 1992.

## Discussion

We apply section 7430 as amended by Congress in the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727.

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the prevailing party; (2) has

exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding. Sec. 7430(a) and (b)(1), (3). Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the prevailing party; and (2) did not unreasonably protract the administrative proceeding. Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of administrative or litigation costs under section 7430. Rule 232(e). Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding. See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a "prevailing party", the taxpayer must: (1) Substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented; and (2) satisfy the applicable net worth requirement. Sec. 7430(c)(4)(A). A taxpayer does not qualify as the prevailing party if the Commissioner can establish that his position in the court and administrative proceedings was substantially justified. Sec. 7430(c)(4)(B)(i).

A. Substantial Justification

The Commissioner's position is substantially justified if, on the basis of all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably. Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact. Pierce v. Underwood, supra; Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565 (construing similar language in the Equal Access to Justice Act). Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'." Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts

and circumstances at the time the Commissioner took his position. Maggie Mgmt. Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession does remain a factor to be considered. Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice of deficiency. Sec. 7430(c)(7)(B)(ii). The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to the petition. Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991); Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987); see sec. 7430(c)(7)(A). Ordinarily, we consider the reasonableness of each of these positions separately in order to allow the Commissioner to change

his position. Maggie Mgmt. Co. v. Commissioner, supra at 442 (citing Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part and revg. in part on another ground T.C. Memo. 1991-144). In the present case, however, we need not follow this approach because respondent's position was essentially the same in the administrative and litigation proceedings. See Maggie Mgmt. Co. v. Commissioner, supra at 442. More specifically, respondent's position was that petitioner had failed to report his allocable share of income from Petito Corp.

Considering all the facts and circumstances, we conclude that respondent's position in this matter was not substantially justified. Respondent determined in the notice of deficiency and maintained in his answer that petitioner failed to report the flowthrough income from Petito Corp. The determination in the notice of deficiency is inconsistent with the treatment by respondent of Petito Corp. as a C corporation as revealed by Internal Revenue Service internal documents. Throughout this proceeding respondent maintained that petitioner understated income on his individual return as a result of a failure to report income that flowed through Petito Corp., an S corporation. This was the position taken in the notice of deficiency as well as in this proceeding. Yet respondent's own internal records reflected that respondent treated Petito Corp. as a C corporation despite the filing of Forms 1120S by the corporation for the

years 1990, 1991 and 1992.  It was only after the Court's opinion in <u>Petito v. Commissioner</u>, T.C. Memo. 2000-363, on petitioner's motion for reconsideration, that petitioner and respondent's counsel apparently became aware that in fact the IRS had treated Petito Corp. as a C corporation in its internal records.  It was at this point that respondent conceded all adjustments in this case, recognizing that his determination and position were inconsistent with his own administrative records.[3]

Respondent failed to explain to the Court why he proceeded as he did in this case and why no one in the IRS discovered at some earlier time that respondent's determination in the notice of deficiency and position taken in this litigation were inconsistent with respondent's internal records.  Considering the ease with which respondent could have determined Petito Corp.'s correct status, it was unreasonable for respondent to issue the disputed notice of deficiency to petitioner and to litigate this case.

B.  <u>Unreasonable Protraction of the Proceedings</u>

Respondent contends that petitioner should not be awarded

---

[3] Respondent indicated that consistent treatment of Petito Corp. with the internal documents would require respondent to proceed directly against the corporation.  Respondent also acknowledged that the normal 3-year period of limitations under sec. 6501(a) for making an assessment against Petito Corp. has expired.

administrative or litigation costs to the extent that petitioner unreasonably protracted the proceedings in this case.  Respondent points primarily to the number and length of the motions that petitioner filed with the Court.

Although most of petitioner's submissions to the Court were verbose, we note that petitioner is not a lawyer and he was acting pro se in this matter.  Considering all the circumstances, we reject the assertion that petitioner unreasonably protracted the proceedings within the meaning of section 7430(b)(3).  See, e.g., <u>Mearkle v. Commissioner</u>, 90 T.C. 1256 (1988).

C. <u>Administrative and Litigation Costs Associated With Criminal Proceedings</u>

Respondent contends that petitioner is not entitled to administrative or litigation costs associated with the criminal investigation and petitioner's subsequent indictment.  We agree.

Section 7430 permits an award of reasonable administrative costs incurred in connection with an administrative proceeding within the IRS and reasonable litigation costs incurred in connection with a court proceeding.  Section 7430(c)(6) defines the term "court proceeding" to mean any civil action.  Accordingly, petitioner is barred in this action from claiming litigation costs associated with the criminal proceedings brought against him.  Similarly, the flush language of section 7430(c)(2) limits the term "reasonable administrative costs" to costs incurred on or after the earlier of the taxpayer's receipt of a

notice of decision from the Commissioner's Appeals Office, the date of a notice of deficiency, or the date the first letter of a proposed deficiency is sent. Inasmuch as respondent did not issue to petitioner either an Appeals Office notice of decision or a letter of proposed deficiency, petitioner's claim for administrative costs is limited to costs incurred after December 29, 1999--the date of the notice of deficiency.

D. Reasonable Administrative and Litigation Costs

We now decide whether the amounts claimed by petitioner for administrative and litigation costs are reasonable, and if not, what portion of the amounts claimed should be awarded under section 7430. Petitioner is requesting $10,500 in attorney's fees and $4,200 in accountant's fees paid to Mr. Carra and Mr. Mulcahy, respectively; $20,000 and $2,500 in attorney's fees paid to Fred Schwartz (Mr. Schwartz) and Richard Fish (Mr. Fish), respectively; pro se/lost business opportunities of $40,800; travel expenses of $3,000; telephone, copying, office supplies, and equipment expenses of $5,500; and punitive damages of $9 million. Respondent objects to the reasonableness and amounts of the alleged fees and expenses.

1. Attorney's and Accountant's Fees

a. Mr. Carra/Mr. Mulcahy

The record shows that Mr. Carra provided legal services and Mr. Mulcahy provided accounting services to petitioner with

regard to the criminal investigation and related proceedings. Consistent with our discussion of this point above, we conclude that petitioner is not entitled to an award under section 7430 for such attorney's or accountant's fees.

        b.  <u>Mr. Schwartz/Mr. Fish</u>

The record shows that Mr. Schwartz and Mr. Fish provided legal services to petitioner with regard to both the criminal proceedings and petitioner's Tax Court case.  Although the record is not a model of clarity, we conclude that Mr. Schwartz and Mr. Fish spent a total of 24 hours and 2 hours, respectively, providing legal services to petitioner with regard to his Tax Court case.

Section 7430(c)(1)(B)(iii) and the flush language therein provide that reasonable attorney's fees shall not exceed a fixed hourly rate (subject to an annual cost of living adjustment) unless the Court determines that a special factor justifies a higher rate.  During the period in question, the adjusted hourly rate for attorney's fees under section 7430(c)(1)(B)(iii) was fixed at $140 per hour.  See Rev. Proc. 2001-13, 2001-1 C.B. 337, 341.

Petitioner has not identified, to the Court's satisfaction, any special factor justifying an hourly rate greater than $140 for the services provided by Messrs. Schwartz and Fish.

Consequently, petitioner is entitled to an award in this matter of $3,640 for reasonable attorney's fees (26 hours x $140 per hour).

### 2. Pro Se Expenses/Opportunity Costs

Petitioner is not entitled to recover costs for the value of his pro se services.  We have held that a pro se attorney may not recover fees for the value of his own services because lost opportunity costs are not fees paid or incurred for the services of an attorney within the meaning of section 7430.  Frisch v. Commissioner, 87 T.C. 838, 844-846 (1986).  Thus, the $40,800 that petitioner claims for the value of the time that he spent representing himself in this matter constitutes "opportunity costs" which are not costs which may be awarded under section 7430.

### 3. Travel Expenses

Mileage and parking fees incurred while traveling to and from the various hearings in this matter are not expenses which fall within the purview of section 7430.  See Mason v. Commissioner, T.C. Memo. 1998-400.  Accordingly, petitioner is not entitled to an award for travel expenses.

### 4. Miscellaneous Expenses

Although telephone, copying, and office supply expenses may be reimbursable administrative or litigation costs under section 7430, see Schaefer v. Commissioner, T.C. Memo. 1991-426,

petitioner failed to submit any detailed records to support his claim that he incurred costs of $5,500 for such items. Nevertheless, because it is obvious that petitioner incurred some miscellaneous expenses, we will allow a recovery of $500 for these items, bearing heavily upon petitioner for his failure to itemize and substantiate his costs.  See O'Bryon v. Commissioner, T.C. Memo. 2000-379 (applying the doctrine of Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), to an award of costs under section 7430); see also Malamed v. Commissioner, T.C. Memo. 1993-1.

   5.  Punitive Damages

Petitioner claims that he is entitled to an award of $9 million in punitive damages attributable to the reckless conduct of respondent's employees in this case.  Petitioner cites the "Taxpayer Bill of Rights" as authority for an award of up to $1 million for each instance in which an IRS employee intentionally disregards a provision of the Internal Revenue Code.

Section 7433 provides for civil damages for certain unauthorized collection actions.  Section 7433(a) provides that a taxpayer may bring a civil action for damages against the United States in a U.S. District Court.  The Tax Court is not vested with jurisdiction to consider petitioner's claim for punitive damages under this provision.  Accordingly, petitioner's claim for punitive damages is denied.

To reflect the foregoing,

An appropriate order and

decision will be entered.