T.C. Memo. 2002-110

UNITED STATES TAX COURT

THU CUC THI HUYNH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12535-00.                    Filed May 1, 2002.

Bruce E. Gardner, for petitioner.

Lindsey D. Stellwagen, for respondent.

MEMORANDUM OPINION

ARMEN, Special Trial Judge:    This matter is before the
Court on petitioner's motion for an award of administrative and
litigation costs, filed pursuant to section 7430 and Rules 230
through 233.[1]   Petitioner seeks an award of $15,222 in respect of

_____

[1]   Unless other indicated, all section references are to the
Internal Revenue Code, as amended; however, references to sec.
7430 are to such section in effect at the time that the petition
                                                    (continued...)

respondent's deficiency determination of $2,347.

After concessions by respondent,[2] the issues for decision are as follows:

(1) Whether respondent's position in the administrative and court proceedings was substantially justified.

(2) Whether petitioner exhausted her administrative remedies.

(3) Whether petitioner unreasonably protracted the administrative and court proceedings.

(4) Whether the administrative and litigation costs claimed by petitioner are reasonable.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioner's motion. See Rule 232(a)(2). We therefore decide the matter before us based on the record that has been developed to date.

Petitioner resided in Alexandria, Virginia, at the time that her petition was filed with the Court.

---

[1](...continued)
was filed (Dec. 6, 2000). All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes: (1) Petitioner substantially prevailed, see sec. 7430(c)(4)(A)(i); and (2) petitioner satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

Background

As a preliminary matter, we note that petitioner's motion for an award of costs arises in the context of a deficiency action in which the only taxable year in issue is 1999. Nevertheless, the theory behind petitioner's motion requires that we also consider the taxable year 1998.

A.  Petitioner

Petitioner is a low-income individual who, during 1998 and 1999, worked as a "nail technician" (a manicurist) in various "nail salons" in northern Virginia.  Petitioner is the daughter of Tra Thi Nguyen (Mrs. Nguyen); petitioner is also the single parent of a son, Hai Minh Huynh (Hai), who was born in 1990.

B.  Petitioner's Tax Return for 1998

In February 1999, petitioner filed a U.S. Individual Income Tax Return, Form 1040, for the taxable year 1998.  On her return, petitioner claimed: (1) Head of household filing status; (2) the standard deduction for that filing status; (3) dependency exemptions for Mrs. Nguyen and Hai; and (4) an earned income credit based on her son as a "qualified child".  Petitioner also claimed a refund of tax in the amount of $1,609.

Petitioner's 1998 return was selected for examination.  By letter dated April 23, 1999, respondent proposed to: (1) Change petitioner's filing status from head of household to single (and allow only the standard deduction for the latter filing status);

and (2) disallow the two dependency exemptions and the earned income credit. Concurrently, respondent requested specific information and documentation from petitioner to substantiate the filing status, dependency exemptions, and earned income credit as claimed on her return.

Petitioner either failed to respond or failed to respond adequately to respondent's request. Accordingly, in September 1999, respondent determined a deficiency in petitioner's income tax for 1998. The deficiency was attributable to the adjustments proposed in respondent's April 23, 1999, letter.

In December 1999, petitioner commenced a case in this Court by filing a petition for redetermination. See sec. 6213(a). Petitioner's case was assigned docket No. 18517-99S. In her petition, petitioner alleged that she provided her son's "entire support".

Petitioner's case was considered by respondent's Appeals Office at the Philadelphia Service Center. In due course, the case was settled by respondent's concession that petitioner was entitled to the refund of tax as claimed on her return. A stipulation to that effect was filed by the parties on October 2, 2000. On the following day, the Court entered decision "pursuant to the stipulation of the parties".

C.  Petitioner's Tax Return for 1999

In March 2000, petitioner filed a U.S. Individual Income Tax Return, Form 1040, for the taxable year 1999.  On her return, petitioner claimed: (1) Head of household filing status; (2) the standard deduction for that filing status; (3) a dependency exemption for Hai (but not for Mrs. Nguyen); and (4) an earned income credit based on her son as a "qualifying child". Petitioner also claimed a refund of tax in the amount of $2,177.

Petitioner's 1999 return was selected for examination.  By letter dated April 21, 2000, respondent sent petitioner an examination report in which respondent proposed to: (1) Change petitioner's filing status from head of household to single (and allow only the standard deduction for the latter filing status); and (2) disallow the dependency exemption and the earned income credit.  In the letter, respondent also advised petitioner that if she disagreed with the proposed changes, respondent would consider whatever information and documentation that she might care to submit.  In this regard, respondent provided petitioner with Form 886-H, Supporting Documents, that outlined the type of information and documentation relevant to resolving issues related to filing status, dependency exemptions, and the earned income credit.  Finally, respondent advised petitioner of her right to appeal administratively the proposed changes and enclosed with the letter a copy of Publication 5, Your Appeal

Rights and How To Prepare a Protest If You Don't Agree.

On May 22, 2000, petitioner responded to respondent's April 21, 2000, letter by providing certain information and documentation. This material included a landlord's rental payment ledger, a statement history from Virginia Power showing subsidies for "Energy Assistance", and a "Certificate of Enrollment" from the Fairfax County Public Schools regarding petitioner's son. By letter dated June 1, 2000, respondent acknowledged receipt of this material and promised to respond by July 1, 2000.

The information and documentation provided by petitioner was analyzed by one of respondent's tax examiners. In a worksheet dated June 23, 2000, the tax examiner expressed a number of concerns regarding that material. The examiner's concerns included (but were not limited to) the following: (1) The landlord's rental payment ledger identified Mrs. Nguyen, rather than petitioner, as the lessee and as the person who paid the rent; and (2) the rental payment ledger did not disclose the number of individuals who occupied the unit.

By letter dated June 23, 2000, respondent advised petitioner that additional information would be required if respondent were to rescind the proposed changes to petitioner's return. Respondent enclosed with the letter Form 886A, Explanation of Items, and specifically requested copies of canceled checks to

verify rental and utility payments. Finally, respondent again advised petitioner of her right to appeal administratively the proposed changes and enclosed another copy of Publication 5.

Petitioner did not respond to respondent's June 23, 2000, letter, nor did petitioner administratively appeal the proposed changes to her 1999 return. Accordingly, on October 6, 2000, respondent sent petitioner a notice of deficiency.

The deficiency as determined by respondent was in the amount of $2,347 and was based on the same adjustments as proposed in respondent's April 21, 2000, letter; i.e., change in petitioner's filing status from head of household to single (with a concomitant change in the amount of the standard deduction) and disallowance of the dependency exemption and the earned income credit in respect of petitioner's son.

On October 23, 2000, petitioner retained her present counsel. Shortly thereafter, on October 29, 2000, petitioner's counsel sent a letter to respondent requesting that the notice of deficiency be rescinded based on respondent's concession in docket No. 18517-99S (the case involving the 1998 year). Petitioner's counsel imposed a deadline of November 23, 2000, for respondent to agree to a rescission. Petitioner's counsel did not provide any of the information or documentation that respondent had previously requested in respondent's letters dated April 21, 2000, and June 23, 2000, to petitioner.

On November 21, 2000, petitioner's counsel sent another letter to respondent, extending the rescission deadline to November 28, 2000. Again, petitioner's counsel did not provide any of the information or documentation that respondent had previously requested in respondent's letters to petitioner. Rather, petitioner's counsel asserted that "you may be subject to attorney fees and costs by not timely responding to this letter."

On December 6, 2000, petitioner commenced the present case by filing a petition for redetermination. See sec. 6213(a). Petitioner placed the entire amount of the deficiency in dispute, assigning error to each of the adjustments made by respondent in the notice of deficiency. Petitioner attached to her petition a number of documents, all but one of which (monthly telephone statements) were already in respondent's possession.

On March 6, 2001, respondent filed an answer. In the answer, respondent denied all of petitioner's assignments of error.

On April 9, 2001, respondent's paralegal spoke with the manager of the apartment complex where petitioner resided. This conversation was followed by a written request for documentation. The written request stated, in part, as follows:

> This is to follow up our telephone conversation of April 9, 2001, and to request that you forward copies of the documents you mentioned pertaining to the rental of Apt. #207 * * * . As I recall, you indicated that you have a copy of the lease agreement in effect for 1999 for Apt. 207, and the application papers Ms. Tra

> Nguyen [petitioner's mother] submitted on the first of
> November of each year claiming head of household status
> for Section 8 housing.  I understand that HUD - Fairfax
> Co. contributed $482.00 to Ms. Nguyen's monthly rent
> during 1999 in the amount of $724.00 for the 2 bedroom
> unit, and that Ms. Nguyen's payment was $242.00 per
> month.  I would appreciate receiving copies of
> documentation substantiating HUD's monthly payment and
> Ms. Nguyen's monthly rental payment during 1999,
> whether it be copies of canceled checks, rental
> ledgers, or any other form of documentation.
>
> In addition, if you will, please provide copies of
> Ms. Nguyen's annual application claiming head of
> household for Section 8 assistance.

In late April 2001, respondent received documentation from the apartment complex manager establishing that Mrs. Nguyen, petitioner, and petitioner's son resided in a rent-subsidized apartment and that Mrs. Nguyen received Supplemental Security Income (SSI).  The documentation also included a statement, signed by Mrs. Nguyen and petitioner, that identified Mrs. Nguyen as the head of the household and that showed the amount of Mrs. Nguyen's SSI as greater than the amount of petitioner's income.

By letter dated May 18, 2001, respondent's paralegal proposed to petitioner's counsel that petitioner concede the case based on the information obtained from petitioner's apartment complex.  However, the paralegal indicated that if petitioner preferred, the case could be forwarded to respondent's Appeals Office.

On May 24, 2001, petitioner filed a motion for summary judgment on the ground that respondent "is collaterally estopped

from pursuing the same tax deficiency issues in the 1999 tax year that were decided on the merits for the 1998 tax year."

By letter dated May 28, 2001, petitioner's counsel replied to respondent's paralegal's letter of May 18, 2001. In his letter, petitioner's counsel stated that he was not familiar with the "interrelationship" of Mrs. Nguyen to petitioner.

In early June 2001, respondent's counsel obtained documentation confirming that petitioner's son's medical bills were paid by Medicaid. At the same time, respondent's counsel also obtained the administrative file for petitioner's 1998 taxable year. Included within that file was the original "Certificate of Enrollment" from the Fairfax County Public Schools for petitioner's son. Upon examining that document, respondent's counsel concluded that it had been altered. Also included within the administrative file for petitioner's 1998 taxable year was another "Certificate of Enrollment" for petitioner's son but with a different enrollment date. Respondent's counsel concluded that the second certificate had also been altered.

Respondent's counsel continued to develop the facts.[3] Ultimately, based on her analysis of the administrative files and information that she gathered from other sources, respondent's

---

[3] In her Declaration, respondent's counsel states that "During this time I did not receive any information from petitioner's counsel that would assist in the resolution of these issues."

counsel concluded that governmental agencies and/or Mrs. Nguyen paid more than one-half of the household expenses and that, as a consequence, petitioner did not qualify for either head-of-household filing status or a dependency exemption for her son. On the other hand, respondent's counsel concluded that for purposes of the earned income credit, Hai was the qualifying child of both Mrs. Nguyen and petitioner. Because respondent's counsel was not able to establish that Mrs. Nguyen received earned income in 1999, respondent's counsel concluded that under the "tie-breaker" rule of section 32(c)(1)(C), petitioner was the individual who was entitled to the earned income credit.

By letter to petitioner's counsel dated June 13, 2001, respondent's counsel stated that "this case should be quickly resolved." Respondent's counsel then unconditionally conceded the earned income credit issue and proposed that petitioner concede the filing status, standard deduction, and dependency exemption issues.

By letter dated June 19, 2001, petitioner's counsel accepted respondent's concession of the earned income credit issue but was noncommittal regarding the other issues, stating that "I concur that this case can be quickly resolved when all of the facts are determined."

On June 26, 2001, respondent filed with the Court a notice of objection to petitioner's motion for summary judgment.

Respondent filed the objection pursuant to the Court's Notice of Filing, which called for the filing of an objection by June 25, 2001. In the objection, respondent maintained that collateral estoppel was inapplicable with respect to the substantive issues in dispute because none of the issues in the prior case were actually litigated by the parties and decided by the Court.

By Order dated June 27, 2001, the Court calendared petitioner's motion for summary judgment for hearing on August 8, 2001.

On July 18, 2001, in anticipation of filing a motion for an award of costs, petitioner executed a Declaration In Support Of Satisfaction Of The Net Worth Requirements. In the Declaration, petitioner stated, in part, that "I fully participated in an appeals office conference while the case was in a docketed status."[4]

On August 3, 2001, the parties filed a Stipulation of Agreed Adjustments. In the stipulation, petitioner conceded the filing status, standard deduction, and dependency exemption issues, and respondent conceded the earned income credit issue. On the same day, petitioner filed a motion to withdraw petitioner's motion

---

[4] Respondent contends that petitioner never participated in an Appeals Office conference. We note that there is nothing in the record to support petitioner's statement; we note further that in petitioner's Reply, filed Jan. 14, 2002, see infra, petitioner appears to admit that no Appeals Office conference ever occurred.

for summary judgment. In the motion to withdraw, petitioner stated that she intended to file a motion for an award of costs within 30 days.

In an Order dated August 7, 2001, the Court stated that petitioner's motion for summary judgment lacked merit; nevertheless, the Court granted petitioner's motion to withdraw inasmuch as respondent did not oppose such action.

On September 26, 2001, petitioner filed her motion for an award of costs. On November 28, 2001, respondent filed a response, together with a supporting memorandum and Declaration, objecting to the granting of petitioner's motion. Thereafter, on January 14, 2002, petitioner filed a reply, and on January 22, 2002, respondent filed a response.

Discussion

We apply section 7430 as amended by Congress in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727.[5]

A. Requirements For a Judgment Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the prevailing party; (2) has exhausted his or her administrative remedies within the IRS; and

_____

[5] Sec. 7430 was amended most recently by Congress in the Community Renewal Tax Relief Act of 2000 (CRTRA), Pub. L. 106-554, sec. 319(25), 114 Stat. 2763A-587, 2763A-647. The amendment, which is effective on the date of enactment of CRTRA (Dec. 21, 2000), affects only sec. 7430(c)(3) and is purely clerical in nature.

(3) did not unreasonably protract the court proceeding.  Sec. 7430(a) and (b)(1), (3).  Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the prevailing party; and (2) did not unreasonably protract the administrative proceeding.  Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430.  Rule 232(e).  Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding.  See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a "prevailing party", the taxpayer must: (1) Substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented; and (2) satisfy the applicable net worth requirement.  Sec. 7430(c)(4)(A).  Respondent concedes that petitioner has satisfied the requirements of section 7430(c)(4)(A).  Petitioner will nevertheless fail to qualify as the prevailing party if respondent can establish that respondent's position in the court and administrative proceedings was substantially justified.  Sec. 7430(c)(4)(B)(i).

B. Substantial Justification

The Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably. Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact. Pierce v. Underwood, supra; Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565 (construing similar language in the Equal Access to Justice Act). Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'". Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts

and circumstances at the time that the Commissioner took his position. Maggie Mgmt. Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession does remain a factor to be considered. Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice of deficiency. Sec. 7430(c)(7)(B)(ii). The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to the petition. Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of this Court; Sher v. Commissioner, supra at 134-135; see sec. 7430(c)(7)(A). Ordinarily, we consider the reasonableness of each of these positions separately in order to allow the Commissioner to change

his position.  Maggie Mgmt. Co. v. Commissioner, supra at 442 (citing Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part and revg. in part on another ground T.C. Memo. 1991-144).  In the present case, however, we need not follow this approach because respondent's position was essentially the same in the administrative and litigation proceedings.  See Maggie Mgmt. Co. v. Commissioner, supra at 442.  More specifically, respondent's position was that petitioner had failed to substantiate her entitlement to head of household filing status (and the standard deduction for that filing status) and a dependency exemption deduction and earned income credit in respect of her son.

Deductions and credits are matters of legislative grace.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Segel v. Commissioner, 89 T.C. 816, 842 (1987).  The same may be said of a tax-favored filing status such as head of household.  See D'Anjou v. Commissioner, T.C. Memo. 1992-138.  Taxpayers are required to substantiate the deductions and credits that they claim by maintaining records necessary to establish both the taxpayers' entitlement to such items and the proper amount thereof.  Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.; see Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Segel v. Commissioner,

supra; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); see also sec. 7491(a)(2)(A) and (B).  A taxpayer's self-serving declaration is no ironclad substitute for the records that the law requires.  See <u>Weiss v. Commissioner</u>, T.C. Memo. 1999-17; see also <u>Seaboard Commercial Corp. v. Commissioner</u>, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for the deduction or exclusion claimed by the taxpayer); <u>Halle v. Commissioner</u>, 7 T.C. 245, 247 (1946) (a taxpayer's return is not self-proving as to the truth of its contents), affd. 175 F.2d 500 (2d Cir. 1949).

Factual determinations are required in order to decide whether a taxpayer is entitled to: (1) Head-of-household filing status, see sec. 2(b); (2) a dependency exemption deduction, see secs. 151 and 152; or (3) an earned income credit, see sec. 32. We have held that whenever the resolution of adjustments requires factual determinations, the Commissioner is not obliged to concede those adjustments until the Commissioner has received, and has had a reasonable period of time to verify, adequate substantiation for the matters in question.  <u>Gealer v. Commissioner</u>, T.C. Memo. 2001-180, and cases cited therein; <u>O'Bryon v. Commissioner</u>, T.C. Memo. 2000-379, (and cases cited therein); <u>Cooper v. Commissioner</u>, T.C. Memo. 1999-6.

In the present case, respondent never received adequate substantiation regarding petitioner's claimed filing status and dependency exemption deduction, and petitioner ultimately conceded those issues. In contrast, by June 2001, respondent received adequate substantiation regarding petitioner's claimed earned income credit, and respondent immediately conceded that issue unconditionally.

Petitioner contends that it was unreasonable for respondent to require adequate substantiation for the adjustments in issue because respondent was collaterally estopped from even making those adjustments.[6] In this regard, petitioner points to the decision in petitioner's favor that was entered in docket No. 18517-99S regarding the taxable year 1998. However, petitioner's argument ignores the fact that none of the issues in the prior case was actually litigated by the parties and decided by the Court. See Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), discussing the requirements for collateral estoppel. Rather, in the case at docket No. 18517-99S, the Court merely entered decision pursuant to the stipulation of the parties. In this regard, what we said many years ago in Hart Metal Prods. Corp. v. Commissioner, T.C. Memo. 1969-164, affd. 437 F.2d 946 (7th Cir. 1971) is apropos:

_____

[6] We note that petitioner's contention appears to be inconsistent with her concession in the present case of the issues related to filing status, standard deduction, and the dependency exemption deduction.

It is well settled that a judgment is conclusive in an action only as to matters actually litigated and determined in the prior action and that where a decision of this Court constitutes only a pro forma acceptance of an agreement between the parties to settle their controversy for reasons undisclosed, there has been no such determination as is required for the application of the doctrine of collateral estoppel. United States v. International Bldg. Co., 345 U.S. 503. In the prior case no trial or argument was had and no stipulations of facts or briefs were filed. Our decision of no deficiency was entered pro forma upon the basis of an agreement of the parties to settle the case for reasons undisclosed. Accordingly, the doctrine of collateral estoppel has no application here.

Petitioner also contends that it was unreasonable for respondent to require adequate substantiation for the adjustments in issue because (so petitioner alleges) such substantiation was already in respondent's files for petitioner's 1998 taxable year. However, petitioner's argument ignores the fact that "each taxable year stands on its own and must be separately considered." Pekar v. Commissioner, 113 T.C. 158, 166 (1999); see Rinehart v. Commissioner, T.C. Memo. 2002-9; see also Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957). In other words, each taxable year stands on the facts existing in that year, and, as experience teaches, the facts may change from year to year.[7]

---

[7] Petitioner cites Nguyen v. Commissioner, T.C. Memo. 2001-41, for the proposition that the Commissioner is not substantially justified when he fails to examine information already in his possession. Petitioner's reliance on the Nguyen case is misplaced, however. In that case, the Commissioner had obtained documentation for the year in issue from the taxpayer. Having solicited that documentation, we held that it was

(continued...)

Petitioner also contends that it was unreasonable for respondent not to sever the filing status and dependency exemption issues from the earned income credit issue and allow petitioner an earned income credit irrespective of having a "qualifying child". See sec. 32(c)(1)(A)(ii). Yet petitioner also tells us (in arguing that an award of costs of $15,222 is reasonable) that the three issues are "interrelated". In any event, petitioner's contention again ignores the fact that the allowance of an earned income credit, whether or not based on a "qualifying child", requires factual determinations.

In view of the foregoing, we hold that respondent's position in the administrative and court proceedings was substantially justified. In so holding, we have considered other arguments made by petitioner for a contrary result and found those arguments to be without merit.

C. Remaining Requirements of Section 7430

Because respondent's position in the administrative and court proceedings was substantially justified, we need not decide whether petitioner exhausted her administrative remedies, whether petitioner unreasonably protracted the proceedings, or whether

---

[7](...continued)
unreasonable for respondent not to evaluate it before issuing a notice of deficiency. In any event, in the present case, respondent actually evaluated information for the year in issue obtained from the taxpayer, found it wanting, solicited additional information, and only then, after petitioner was not forthcoming with such additional information, issued the notice of deficiency.

the administrative and litigation costs claimed by petitioner are reasonable.

D.  Conclusion

In conclusion, we hold that petitioner is not entitled to an award of administrative and litigation costs.

In order to reflect the foregoing,

An appropriate order and decision under Rule 155 will be entered.